**FILED**
**Mar 13, 2024**
**03:12 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **SHUNEKARI HARRIS,** | ) | **Docket No. 2022-06-0698** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **AMERICAN INTERNATIONAL** | ) | **State File No. 800860-2022** |
| **GROUP, INC., d/b/a AMERICAN** | ) | |
| **HOME ASSURANCE,** | ) | |
| **Employer,** | ) | |
| | ) | |
| **AMERICAN CASUALTY CO. OF** | ) | **Judge Joshua Davis Baker** |
| **READING, PA,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

At an expedited hearing, Ms. Harris asked for medical and temporary disability benefits, and reimbursement for medical costs, for alleged work-related bilateral tenosynovitis. American Home Assurance (AIG) opposes her requests, asserting she did not give timely notice of her claim and lacks medical proof relating her injuries to her employment. The Court holds Ms. Harris is unlikely to prevail at a hearing on the merits in proving a causal connection between her employment and her injury and denies her request for benefits. In addition, AIG's notice defense is rejected.

### Claim History

Ms. Harris worked at AIG for approximately eight years until October 6, 2021. At that time, she took leave to get treatment for her right hand. Dr. Christopher Jones completed her short-term disability form and took her off work from that day until December 16, 2021. Ms. Harris, however, never returned to work for AIG.

Two days before her leave began, Ms. Harris said she contacted Kevin Polk, her supervisor, to let him know she was "having problems with my right hand and needed to

1

see the doctor." Ms. Harris did not mention that her right-hand problems resulted from her work, and the short-term disability paperwork did not mention this either.

While on leave, Ms. Harris saw Dr. Jones several times and attended physical therapy. None of the medical notes states that her condition arose from work.

On March 7, 2022, Ms. Harris received an email from Jamie Hafer, a human resources representative, telling her that her short-term disability payments stopped because Dr. Jones had not provided additional records to show entitlement to further benefits. Ms. Hafer told her to contact Guardian, the vendor who oversees disability leave payments, and reapply.

Ms. Harris did so and said someone at Guardian advised her to start a workers' compensation claim. According to Ms. Harris, this conversation happened on April 1 and was the first time she associated her claim to her work. That same day, she emailed Ms. Hafer and requested information on filing a claim. She filed a Petition for Benefit Determination on April 7.

In her Petition, Ms. Harris complained that AIG failed to report her workers' compensation hand injuries. She recounted that she told Mr. Polk about her injury on October 4, 2021. Mr. Polk admitted knowing Ms. Harris was taking leave for hand treatment, but he denied she said it was due to a work injury. At the hearing, AIG maintained that it first knew Ms. Harris was asserting a workers' compensation claim on April 1.

After the Petition was filed, the parties mediated, and their versions of what occurred somewhat differ but are not incongruent. In an affidavit, Anthony Grunkmeyer, an insurance adjuster, said he offered Ms. Harris a panel of physicians on May 6 and May 26, but Ms. Harris refused to choose a doctor. Ms. Harris did not deny that AIG offered her a panel but said she never received it and continued treating with her own doctors after the mediator said she could.

On May 9, 2022, while mediation was still ongoing, Ms. Harris saw Dr. Todd Rubin, who diagnosed bilateral tenosynovitis. He offered either surgery or conservative treatment. Ms. Harris selected conservative treatment and continued physical therapy. Dr. Rubin's medical notes did not reference a work injury.

While the events beginning in the fall of 2021 were happening, Ms. Harris was also receiving treatment from Dr. Steven Koester, a chiropractor, for back pain stemming from an earlier automobile accident. Ms. Harris sent Dr. Koester a questionnaire seeking his causation opinion. He responded that he was treating her for "cervical radiculopathy, thoracic radiculopathy, and upper extremity subluxations." He checked boxes on the

questionnaire stating that her need for medical treatment was more than 50% caused by her work and recommended ongoing chiropractic care.[1]

After receiving the questionnaire, Ms. Harris requested an expedited hearing, and one was scheduled. The Court continued the hearing to allow the parties time to depose Dr. Koester about his responses. He ended up sitting for a deposition three times.

The first two times were on June 6 and 12, 2023. Throughout the depositions, AIG presented Dr. Jones's records. Dr. Koester agreed that, despite his questionnaire answers, he could not say that the conditions he treated Ms. Harris for were more than 50% caused by her work. Further, he could not say that her bilateral tenosynovitis was more than 50% caused by work.

After the deposition, the Court reset the expedited hearing. Before the hearing, however, Ms. Harris contacted Dr. Koester and secured an affidavit where he changed directions and causally-related her bilateral tenosynovitis to her work. He cited presentation of new information for changing his opinion, stating "the prior doctors whose medical notes were provided by Mrs. Harris give a clear picture of her work injury, and I stand firmly by [my] opinion in my causation letter."

After this turn of events, the Court again continued the expedited hearing, and the parties deposed Dr. Koester for the third time. At that time, Dr. Koester walked back his affidavit statement that he received new information after the first deposition. He admitted that AIG's counsel had in fact shown him the same information in the earlier depositions. In the end, Dr. Koester retreated to his causation opinion from his first deposition, where he said that Ms. Harris's bilateral tenosynovitis is not more than 50% related to her work.

At the hearing, Ms. Harris asked that AIG pay for medical bills in treating her alleged workplace injuries. She also asked for temporary disability benefits from her last day worked to the present, and for additional medical treatment.

AIG argued that Ms. Harris failed to timely report her injury, so the claim should be denied. It further argued that she failed to carry her burden of proving she would likely succeed at a hearing on the merits because of Dr. Koester's causation opinion.[2]

### Findings of Fact and Conclusions of Law

To receive benefits, Ms. Harris must present sufficient evidence that she would likely prevail at a final hearing in proving her entitlement to them. *See* Tenn. Code Ann.

---

[1] Although Dr. Koester's questionnaire response suggests back treatment, the parties agreed that Ms. Harris is not seeking workers' compensation benefits for a back injury.

[2] Despite these defenses, AIG has not denied Ms. Harris's claim.

§ 50-6-239(d)(1) (2023); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015). The Court holds she did not carry her burden of proving a likelihood of success on the merits due to Dr. Koester's negative causation opinion.

Ms. Harris must prove medical causation to prevail at a final hearing, which requires an expert's testimony to a "reasonable degree of medical certainty" that the employment "contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(12)(C). She did not do so.

Dr. Koester gave many varying opinions throughout this litigation. He first answered a questionnaire causally relating Ms. Harris's back condition to her work despite having treated her for several years before October 2021. Then, he retracted that opinion and said that neither Ms. Harris's back condition nor her bilateral tenosynovitis was caused by her work. After that deposition, he signed an affidavit reversing his deposition testimony, based on supposed new information, and he related her bilateral tenosynovitis to her employment. Finally, at the last deposition, Dr. Koester reversed course again and confirmed the negative causation opinion from his first deposition.

So, when the dust settles, the Court is left with the whipping winds of multiple opinions all converging to form a steady breeze of nothingness. These crosswinds of opinions make it difficult for the Court to have confidence in any of Dr. Koester's opinions and rejects them all. Thus, Ms. Harris is left with no medical opinion relating her injuries to her employment and cannot prove that she would likely prevail at a final hearing. Her claim for medical and temporary disability benefits, and reimbursement of medical costs, is denied.

The Court acknowledges that an employee is not always required to have a positive causation opinion to prevail at an expedited hearing. Indeed, in most circumstances when an employee reports a workplace injury, the Workers' Compensation Law requires the employer to give a panel of physicians. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i). As seen in the Appeals Board's opinion in *Hawes v. McLane Company, Inc.*, 2021 TN Wrk. Comp. App. Bd. LEXIS 30 (Aug. 25, 2021), failure to offer a panel is perilous, as the employer cannot rely on a negative causation opinion to deny treatment at an expedited hearing when it neglected its legal duty to provide a panel.

Ms. Harris's requests here, however, arose from dissimilar circumstances. Unlike *Hawes,* where the employer relied on a negative causation opinion from a doctor without offering a panel, the Court finds AIG did not fail in its duty to offer a panel. Indeed, Mr. Grunkmeyer's affidavit and Ms. Harris's own testimony support the conclusion she had the option to receive treatment from a panel physician, but she instead chose to continue treating with Dr. Koester.

With this proof, the Court finds Ms. Harris's actions, or inactions, are the catalysts that resulted in the need for litigation. Had Ms. Harris chosen a doctor, her claim likely would have been resolved long ago. The Court declines to let her go back now and select a physician almost two years after AIG offered her a panel.

Lastly, the Court denies AIG's notice defense.[3] Ms. Harris credibly testified she first learned her claim could fall under workers' compensation after speaking with a Guardian representative on April 1, 2022. She emailed Ms. Hafer that same day requesting documents to file a claim. The Court finds this email served as timely, sufficient notice of a repetitive stress injury under Tennessee Code Annotated 50-6-201(b)(2).

While AIG argued Ms. Harris should have connected her condition to her work when she first learned she had bilateral tenosynovitis, the Court cannot credit this argument. Ms. Harris is not a doctor, and the condition she suffers from is not one obviously arising from work. Further, her decision to file for short-term disability rather than workers' compensation at the onset of her symptoms casts doubt on AIG's argument that she knew or should have known her condition resulted from her work.

**It is ORDERED** as follows:

1. Ms. Harris's request for medical and temporary disability benefits, as well as reimbursement for medical costs, is denied at this time for lack of proof.

2. The Court sets a **status hearing for Monday, June 3, 2024, at 10:00 a.m. Central Time.** The parties must call (615) 741-2113 or (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**Entered on March 13, 2024**.

_____
**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

---

[3] AIG also moved the Court to deny benefits under Tennessee Rule of Civil Procedure 41.02 at the close of Ms. Harris's proof because she failed to meet her evidentiary burden. The Court took the request under advisement and now finds the motion moot. As determined by the Appeals Board in *Garcia Carrillo v. Hurtado,* 2023 TN Wrk. Comp. App. Bd. LEXIS 40 (Augst 16, 2023), these motions are only useful in an interlocutory hearing to deny benefits in that context with no effect on the continued viability of the employee's workers' compensation claim. Because this Court denied Ms. Harris's requests for benefits, the outcome is the same.

## APPENDIX

Exhibits

1. Rule 72 Declaration of Shunekari Harris
2. Questionnaire responses of Dr. Steven Koester signed 11/8/22
3. Return to work note from Dr. Christopher Jones, 2/22/22
4. Letter from Nurse Practitioner Keith Holley, 8/7/23
5. Medical records (excluding records from Dr. Paul Leavitt, pages 24-68)
6. Rule 72 Declaration of Anthony Grunkemeyer
7. Panel of Physicians form, unsigned
8. Depositions of Dr. Steven Koester, 6/6/23 and 7/12/23
9. Wage Statement
10. Hughston Clinic Fax
11. Email exchange with Jamie Hafer
12. Email correspondence with Kevin Polk dated 10/3/21
13. UNUM denial of short-term disability
14. Ciox Health invoice dated 8/8/23
15. Hughston Clinic authorization to disclose dated 8/24/23
16. Cigna Explanation of Benefits for medical and pharmacy claims
17. VUMC printout and Ms. Harris's accounting of medical bills, excluding Dr. Leavitt's bills
18. UNUM FMLA medical certification
19. Dr. Steven Koester's records  excluding Ms. Harris's handwritten notes
20. Rule 72 Declaration of Dr. Steven Koester
21. Transcript of Dr. Steven Koester's 1/26/24 deposition
22. Video of Dr. Steven Koester's 1/26/24 deposition
23. Settlement from Davidson County Chancery Court

<u>Technical Record</u>

1. Dispute Certification Notice
2. Request for Expedited Hearing
3. Motion to Dismiss filed by Fortitude
4. Employee's Motion to Continue Status Conference,10/14/22
5. Order Granting Dismissal of Fortitude and Continuing Status Conference
6. Notice of Appearance filed by Counsel for American Home Assurance
7. Order on Status Conference entered 1/24/23
8. Employer's Motion to Compel
9. Employer's Notice to Strike Motion to Compel
10. Status Conference Order entered 3/8/23
11. Status Conference Order entered 4/13/23
12. Order Setting Expedited Hearing entered 5/22/23
13. Employee's Motion to Strike June 6 Deposition of Dr. Steven Koester
14. Employee's Motion for Sanctions filed June 6
15. Employer's Motion to Continue Expedited Hearing
16. Employer's Response to Motion to Strike Deposition and Motion for Sanctions
17. Order Denying Motion to Strike and Motion for Sanctions and Granting Motion for Continuance entered 6/21/23
18. Employer's Notice of Deposition filed J7/10/23
19. Order Setting Expedited Hearing entered 7/19/23
20. Employer's Pre-hearing Brief filed 8/2/23
21. Employer's Motion to Present Testimony of Anthony Grunkemeyer and Kevin Polk by Teleconference filed 8/2/23
22. Employer's Witness and Exhibit List
23. Employer's Notice of Filing 6/6 Deposition of Dr. Steven Koester
24. Employer's Notice of Filing 7/12 Deposition of Dr. Steven Koester
25. Employer's Amended Witness and Exhibit List filed 8/9/23
26. Employer's Amended Motion to Present Testimony of Joanne Jenkins and Kevin Polk by Teleconference
27. Order Granting in Part and Denying in Part Motion for Testimony By Phone
28. Employer's Amended Motion to Present Testimony of Kevin Polk by Teleconference or Alternatively to Continue the 8/16/23 Expedited Hearing
29. Order Denying Amended Motion for Testimony by Phone and Resetting Expedited Hearing
30. Order Granting Continuance of Expedited Hearing entered 8/28/23
31. Employer's Motion to Appear by Telephone for Joanne Jenkins and Kevin Polk
32. Employer's Motion to Appear by Telephone for Tifani Campbell
33. Employee's "Motion to Dismiss question number 10"
34. Order on Motions for Testimony by Phone
35. Order Continuing Expedited Hearing and Setting Status Conference entered

12/11/23

36. Employee's Motion
37. Order Setting Expedited Hearing entered January 29, 2024
38. Employer's Response to Employee's Motion and Motion for Sanctions to Quash

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on March 13, 2024.

| Name | Mail | Fax | Email | Service sent to: |
|------|------|-----|-------|------------------|
| Shunekari Harris, Employee | | | X | shunekariharris@gmail.com |
| Allen Grant, David Ward, Employer's Attorneys | | | X | Agrant@eraclides.com dward@eraclides.com adolan@eraclides.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*